THE UNITED STATES, EX REL. THEODORE SCHUMACHER AND
LOUIS ETTLINGER,

*vs.*

E. M. MARBLE, COMMISSIONER OF PATENTS.

LAW. No. 23,990.

{ Decided December 13, 1883.
{ The CHIEF JUSTICE and Justices HAGNER and COX sitting.

1. Whether the act of Congress of June 18, 1874, providing for the registration of labels, is unconstitutional, and, therefore, void, *quære.*
2. A government official cannot call in question the constitutionality of a law directing him to perform a purely ministerial duty.
3. The duty of the Commissioner of Patents, on the application to him to register a label, is a purely ministerial one, as much so as the act of a recorder of deeds in placing upon a public record a muniment of title. The statute has not defined what shall be considered a label, whether it shall be descriptive of the article to which it is affixed, or whether it may be a mere arbitrary design. If the applicant presents it as a label, and appeals to the Commissioner to give it the protection which the law provides for it as a label, the duty of the Commissioner is to register it, and in doing so he gives it only the protection which the statute provides. It is not protected as a trade-mark nor as a copyright. The public at large may use and enjoy it, but *qua* label it is restricted to the use of the party who has registered it for that purpose and no other. With the character of the device the Commissioner is not at all concerned. His function is as purely ministerial as it is capable of being.

### STATEMENT OF THE CASE.

Petition praying a mandamus against the Commissioner of Patents.

The petition set forth that the relators being copartners, and the owners and producers of a certain new label designed to be attached to cigar boxes, delivered to the Commissioner of Patents five copies of said label, together with a statement showing that the same was to be used as a label on cigar boxes. Accompanying the label was a description of the same together with fee of six dollars, and a request that said label be registered in the Patent Office, and that a certificate of such registration be issued to the relators; that said proceedings were had under and in compliance with the act of Congress approved June 18, 1874, entitled

"An act to amend the law relating to patents, trade-marks and copyrights;" that the Commissioner received said fee and said labels, statement, description and request, and registered the same under serial No. 14,637, and date June 8, 1882; and that the Commissioner thereupon refused to complete the registry of said label and to furnish a copy of the record, under the seal of the Commissioner of Patents, to the relators, to the great injury of the relators. The petition concluded with a prayer that a peremptory writ of *mandamus* issue against the Commissioner of Patents, requiring him to complete the registry of said label, and to furnish the relators a copy thereof under his seal.

A rule to show cause why such writ should not be granted was issued, and made returnable before the General Term.

WM. HENRY BROWNE for respondent:

1. A *mandamus* cannot issue unless upon respondent's refusal to obey some positive law; and no act of Congress is law unless strictly in accordance with the Constitution.

The petitioners rely on the act of June 18, 1874, entitled "An act to amend the law relating to patents, trade-marks and copyrights." 18 Statutes at Large, 78; Supplement to Revised Statutes, 41.

That act lacks vitality, unless it springs from one of two clauses in Article I of the Constitution, among the enumerated powers of Congress, to wit, the third clause of section 8:

"To regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

Or, in the eighth clause of said section:

"To promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

2. "Authors." From the title of the act, we naturally look for authority for its existence in the latter clause of the Constitution.

Are the petitioners "authors?" They do not claim to be, but allege in their petition (p. 1) that they are "the owners

and producers of a certain label." In truth they are not "authors," for, says the United States Supreme Court:

" The writings which are to be protected are the fruits of intellectual labor, embodied in the form of books, prints, engravings and the like." Trade-Mark Cases, 100 U. S., 94.

A mere label, capable of no other use than to be pasted on a bottle or other article for sale, is not the work of an author. Scoville vs. Toland, 6 West. L. J., 84; Coffeen vs. Brunton, 4 McLean, 516.

3. "Inventors." Are the petitioners "inventors?"

They do not claim to be, for their application for registration is based on the fact of their being " sole proprietors." Besides that, inventors are protected under a different statute, and for a " limited time," and in the act of 1874 the time is not limited.

The Supreme Court said of a trade-mark—a kind of property superior in nature to a label—that it does not " depend upon novelty, upon invention, upon discovery, or upon any work of the brain. It requires no fancy or imagination, no genius, no laborious thought." Trade-Mark Cases, supra.

The inevitable conclusion is, therefore, that the eighth clause of section 8 of Article I of the Constitution does not apply to this case.

That is intended only to protect a " right," previously well defined and understood.

4. The commerce clause. Can that apply?

Section 3 of the said act of 1874, says:

" That in the construction of this act, the words " engravings," " cut " and " print " shall be applied only to pictorial illustrations of works connected with the fine arts.

" And no prints or labels designed to be used for any other article of manufacture shall be entered under the copyright law, but may be registered in the Patent Office."

A definition of the term " label," as here used, is now required. It is:

" A small piece of paper, or other material, containing the

name, title or description, and affixed to indicate its nature or contents." Worcester's Dic.

"A label is a narrow slip of silk, paper, parchment, &c., affixed to anything denoting its contents, ownership, and the like, as a label of a bottle or package." Webster's Dic.

"Label. A placard or slip attached to an object to denote its contents, destination or ownership." Knight's Am. Mech. Dic. See Skeat's Etymological Dic.

In 1874, soon after the passage of the act under consideration, the Commissioner of Patents found it necessary to construe terms, and his definition has officially been used ever since. It is printed in his rules, as follows:

"The words "prints" and "labels," as used in this act, so far as it relates to registration in the Patent Office, are construed as synonymous, and are defined as any device, picture, word or words, figure or figures (not a trade-mark), impressed or stamped directly upon the articles of manufacture, or upon a slip of paper, or other material, to be attached in any manner to manufactured articles, or to bottles, boxes, and packages containing them, to indicate the contents of the package, the name of the manufacturer or the place of manufacture, the quality of goods, directions for use," &c.

That it is the label of commerce, so frequently discussed by courts in its relation to trade-marks, that is meant in this act, there is not a shadow of doubt; and petitioners concede this point.

It cannot be denied that Congress has power, in its regulation of commerce, to protect arbitrary symbols of trade. Trade-Mark Cases, *supra*; Registration Act of March 3, 1881; Amendatory Trade-Mark Act of 1882.

In protecting commerce, manufactures are incidentally protected.

"Manufactures and commerce are, it is plain to perceive, twin sisters. As they began life together, so in the race do they keep side by side." Browne on Trade-Marks, 78. See, also, "Definition and Nature of a Trade-Mark," *Ibid.*, pp. 53–93.

The convention between the United States and the German Empire, 1872, protects "marks or labels of goods, or of their packages," and also "patterns and marks of manufacture and trade." Sec, also, the declaration between the United States and Great Britain, of 1878, "for the reciprocal protection of marks of manufacture and trade," and "everything · relating to property in trade-marks and trade-labels."

But those trade-labels must be peculiar and characteristic, something of the nature of a trade-mark, although not technically such. But one "has no right to appropriate a sign or symbol, which from the nature of the fact it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose." Canal Co. · *vs.* Clark, 13 Wall.; Manufacturing Co. *vs.* Trainer, 101 U. S., p. 54.

· In this latter case, the court cited Baggett *vs.* Findlater (Law Rep., 17, Eq., 29), where an injunction was refused to restrain the use upon a trade-label of the term "nourishing stout," which the plaintiff had previously used, on the ground that nourishing is a mere English word denoting quality. And the authorities throughout the domain of commerce are all one way on this point. But the act of 1874 does not make any exception. It is sweeping in its language, except that it excludes trade-marks. "Prints or labels," for "articles of manufacture." Any print, any label.

The act is void for uncertainty.

5. Congress exceeded its authority in passing the act of 1874.

.If that piece of legislation has any basis, it must be found ·in the authority to "regulate" commerce. The Supreme Court said, *inter alia*, that after the commerce specially designated:

"There still remains a very large amount of commerce, perhaps the largest, which trade or traffic, being between citizens of the same State, is beyond the control of Congress." Trade-Mark Cases, *supra*.

But the act of 1874 is not restricted in its operation to the commerce under the control of Congress. The court said:

"When, therefore, Congress undertakes to enact a law, which can only be valid as a regulation of commerce, it is reasonable to expect to find on the face of the law, or from its essential nature, that it is a regulation of commerce with foreign nations, or among the several States, or with the Indian tribes. If not so limited, it is in excess of the power of Congress. If its main purpose be to establish a regulation applicable to all trade, to commerce at all points, especially if it is apparent that it is designed to govern the commerce wholly between citizens of the same State, it is obviously the exercise of a power not confided to Congress." * * * "Here is no requirement that such person shall be engaged in the kind of commerce which Congress is authorized to regulate. It is a general declaration," etc. Trade-Mark Cases, *supra*.

Therefore, for the reason that section 3 of the act of Congress, approved June 18, 1874, entitled, "An act to amend the law relating to patents, trade-marks and copyrights," in regard to the registration of prints or labels in the Patent Office, is not warranted by the Constitution, the order made herein, for the Commissioner of Patents to show cause why *mandamus* should not issue, should be dismissed.

From the argument filed by the Commissioner the following is extracted:

By the act of June 18, 1874, the Commissioner of Patents is charged with the supervision and control of the entry and registry of prints and labels. It is his duty, therefore, to determine in every case whether or not the application preferred under that law presents proper subject matter for registration.

In the exercise of this duty it is necessary for him to determine the character of the matter offered for registration, and to ascertain that it is a lawful label within the meaning of the act.

The fact that a public officer is charged with the ministerial duties of signing, sealing, registering, and the like, carries with it, *proprio vigore*, the preliminary duty of ascer-

taining that a suitable case for action is presented. Thus, the Secretary of the Interior is not bound to sign a land patent brought before him in the usual routine of business as a patent for an invention; nor a register of wills to register a deed; nor a recorder of deeds to record a promise to pay; nor the Commisioner of Patents to record a contract for the sale of a machine, as an assignment of a patent right.

The Commissioner of Patents is required by said act to register a label, but not a design, a mechanical invention, or a trade-mark. It would introduce endless confusion into all questions of title if the allegation of the interested party as to the application of certain provisions of law to the facts of his case, were to be taken as conclusive. The respondent does not understand with the relators that the decision in the case of the United States, *ex rel.* The Willcox & Gibbs Sewing Machine Company *vs.* E. M. Marble (1 Mackey, 284), is at variance with the views here expressed. The decision upon the facts of the case was to the effect that a label which is otherwise a proper subject for registration, under the act in question, is not excluded from registration by the fact that it bears upon its face matter which might become a lawful trade-mark. The court did examine into the reasons which led the Commissioner to refuse the registry, and determining after investigation that the judgment of the Commissioner was erroneous, ordered the *mandamus* to issue.

It is respectfully submitted, therefore, that a fanciful design of the character of the one in question, not descriptive or suggestive of any trade or article of manufacture, and which might be applied as an ornament with equal propriety to a box of cigars, a bolt of cloth, a barrel of flour, or to an indefinite variety of articles of merchandise, or which might be preserved for its intrinsic merits as a work of art, or which might become a lawful trade-mark by its association with a particular brand or manufacture, is not a label within the meaning of the act of June 18, 1874. The statutory provisions relating to the same matter existing at the time

of the passage of this act, were as follows: Section 4937 of the Revised Statutes provided as follows:

"Any person or firm domiciled in the United States and any corporation created by the authority of the United States, or of any State or Territory thereof, and any person, firm, or corporation resident of or located in any foreign country which, by treaty or convention, affords similar privileges to citizens of the United States, and who are entitled to the exclusive use of any lawful trade-mark, or who intend to adopt and use any trade-mark for exclusive use within the United States, may obtain protection for such lawful trade-mark by complying with the following requirements:

First. By causing to be recorded in the Patent Office a statement specifying the names of the parties, and their residences and place of business, who desire the protection of the trade-mark; the class of merchandise, and the particular description of goods comprised in such class, by which the trade-mark has been or is intended to be appropriated; a description of the trade-mark itself, with fac similes thereof, showing the mode in which it has been or is intended to be applied and used; and the length of time, if any, during which the trade-mark has been in use.

Second. By making payment of a fee of twenty-five dollars in the same manner and for the same purpose as the fee required for patents.

Third. By complying with such regulations as may be prescribed by the Commissioner of Patents.

Section 4939 provided that: "The Commissioner of Patents shall not receive and record any proposed trade-mark which is not and cannot become a lawful trade-mark, or which is merely the name of a person, firm, or corporation unaccompanied by a mark sufficient to distinguish it from the same name when used by other persons."  *  *  *

Section 4952 provided that: "Any citizen of the United States or resident therein, who shall be the author, inventor, designer, or proprietor of any book, map, chart, dramatic or musical composition, engraving, cut, print, or photograph or negative thereof, or of a painting, drawing, chromo, statue,

statuary, and of models or designs intended to be perfected as works of the fine arts, and the executors, administrators, or assigns of any such person shall, upon complying with the provisions of this chapter, have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing, and vending the same." * * *

Under these provisions of law the designer, or those deriving legal title from him, might register a new and fanciful cut, print and engraving, as copyright matter, irrespective of the use or purpose for which it was designed ; or he might register the same as a trade-mark to be applied to articles of merchandise by making the proper declarations to that effect, as provided in section 4937.

There is no reference in either or any of these sections of law to anything in the nature of a label. The designer of cuts, prints, and engravings, in common with authors, artists, &c., are rewarded for their ingenuity by a limited monopoly in the use of their productions. The proprietors of existing or prospective trade-marks are permitted to make registry of their marks, which are guaranteed a certain measure of protection forever, or so long as the registry shall be renewed.

The Librarian of Congress having brought it to the attention of Congress that great numbers of prints and cuts designed for the purpose of ornamenting and distinguishing, and thereby facilitating the sale of articles of merchandise, and valuable only in that connection, were being offered for registry under the copyright act, the law was amended by the act of June 18, 1874. The third section of that act provides :

"That in the construction of this act, the words 'engraving,' 'cut,' and 'print,' shall be applied only to pictorial illustrations, or works connected with the fine arts, and no prints or labels designed to be used for any other articles of manufacture shall be entered under the copyright law, but may be registered in the Patent Office. And the Commissioner of Patents is hereby charged with the supervision and control of the entry or registry of such prints or labels, in

conformity with the regulations provided by law as to copyright of prints, except that there shall be paid for recording the title of any print or label, not a trade-mark, six dollars, which shall cover the expense of furnishing a copy of the record under the seal of the Commissioner of Patents, to the party entering the same."

In the first clause of this section it is declared that no print, cut, or engraving, shall thereafter be registered as copyright matter which is not applied to pictorial illustrations or works connected with the fine arts. By this provision the law withdraws all protection from those spurious works of art now commonly attached to boxes and bundles of all descriptions, and which are not esteemed for their intrinsic value, but as lending a temporary and cheap adornment to perishable articles of merchandise. They may be more properly regarded as a commercial device than as a "writing" by an "author" tending to promote the advancement of science.

The succeeding clauses of the section in question, provide for the registry of prints and labels designed to be used for other articles of manufacture not connected with the fine arts; and charge the Commissioner of Patents with the supervision and control of the entry and registry of such labels. It is expressly declared that such prints or labels are "not to be entered under the copyright law," such registration not being regarded apparently as being within the sanction of the copyright and patent clause of the Constitution. What constitutional provision there is, or whether there is any, which authorizes legislation of this character, it is not now necessary to discuss. The act itself furnishes no definition of what constitutes a print or label. The word "label," as commonly understood, denotes a slip of paper or other suitable material attached to goods, giving a short description of their character, directions for their use, and other facts of interest to the purchaser. As defined in Webster's Dictionary, "a label is a narrow slip of silk, paper, parchment, &c., affixed to anything denoting its contents ownership, and the like, as a label of a bottle or package."

In the practice of the Patent Office a label has been re-garded as consisting either of a written description or of a pictorial representation of the article itself, its mode of manufacture, or manner of use. As thus understood the section in question provides that a cut, engraving, or print may be registered as a work of art under the copyright law, and that a print of a descriptive character to be affixed to an article of commerce in the nature of a label may be registered in the Patent Office.

In further providing that only those prints and labels, "not a trade-mark," shall be registered, the act furnishes another indication that it is descriptive prints and labels alone which are the proper subject-matter for registry. A merely fanciful sketch or print when affixed to articles of commerce is, or may become by use, the lawful trade-mark of the owner. Such marks by excess of caution are dis-criminated in the act itself from the descriptive prints which form labels proper. As no examination is to be had under the provisions of the act as to any facts outside of the record, viz.: whether the purported label has or has not been used and, as the allegation of the applicant that his proposd label has not been used or published, is conclusive for the purposes of registry, it is evident that the Commissioner must determine from inspection only whether the alleged label seems to be, or is adapted by its nature to become by use, a trade-mark. It would be unlawful, therefore, for him to register as a label a mark which by use in commerce would become a trade-mark, or from its nature would in-evitably lead the public, whether truthfully or by deceit, to assume that it is a veritable mark of trade.

It is apparent upon inspection, that the alleged label of-fered for registration in this case is purely fanciful and ar-bitrary in its proposed application. Whether or not it might in the hands of the designer be registered as a work of art under the copyright law, or as a trade-mark in the hands of the manufacturer who applies it, or intends to ap-ply it to goods of his manufacture, it is not a label, as that word is commonly understood, nor as used in the 3d section of the act of June 18, 1874.

WM. H. BRERETON for relator:

The defendant bases his refusal to register this label on the ground that the same is not, in his judgment, a label, but is a trade-mark, and that the act of Congress, which changes the place of registry of labels from the office of the Librarian of Congress to the Patent Office, confers upon the Commissioner the right to determine whether the subject-matter of an application is properly registrable as a label, or should be registered as a trade-mark. See 22 O. G. Pat. Off., No. 15, page 1291.

Before the passage of the act of June 18, 1874, all prints and labels were registered in the office of the Librarian of Congress.

The statutory provisions under which prints and labels were then registered, and which governed and controlled the registry thereof and the rights of the parties thereunder, are found in sections 4948 to 4971 of the Revised Statutes. Sections 4956 and 4957 relate to the recording of such prints and labels, and the furnishing by the Librarian of a copy of such record. Section 4957 is in the following words:

"The Librarian of Congress shall record the name of such copyright book, or other article, forthwith, in a book to be kept for that purpose, in the words following: "Library of Congress, to wit, Be it remembered * * * * * * And he shall give a copy of the title or description, under the seal of the Librarian of Congress, to the proprietor, whenever he shall require it."

A careful inspection of these various sections will show that the Librarian of Congress never had any power given him to exercise his discretion as to what labels or prints he should register, and what he should not, but, on the contrary, that, as to these matters, he merely occupied the position, and was to perform the duties of, a recording officer.

The proprietor of the print or label was the one to decide whether or not he desired to place his title thereto on record, and by so doing secure to himself the protection which the law afforded. And if he so elected, he was to furnish the necessary copies and pay the prescribed fees to the Librarian

of Congress, and otherwise to perform such acts as the law required as being necessary to the proper registry thereof. These things being done, the Librarian was to record said print or label, and was to furnish a copy, under seal, if the proprietor desired it.

The Librarian of Congress had no more right to refuse to record a print or label—on the ground that, in his opinion, it constituted a trade-mark—than a county clerk would have to refuse to record a deed on the ground that, in his opinion, it was not so drawn as to secure to the parties asking the record thereof the rights sought to be secured.

And we may say that, so far as we are aware, the Librarian of Congress never pretended to exercise any judicial powers in the registry of labels or prints, or of books or pictures.

Such being the law, Congress, on June 18, 1874, by the act referred to in the petition (18 Stats. at Large, p. 78), changed the place of registry of prints and labels designed to be attached to articles of manufacture from the office of the Librarian of Congress to the Patent Office. Section 3 of that act is as follows:

"SEC. 3. That in the construction of this act (the copyright act), the words 'engraving, cut, and print,' shall be applied only to pictorial illustrations or works connected with the fine arts, and no prints or labels designed to be used for any other articles of manufacture shall be entered under the copyright law, but may be registered in the Patent Office. And the Commissioner of Patents is hereby charged with the supervision and control of the entry or registry of such prints or labels, in conformity with the regulations provided by law as to copyright of prints, except that there shall be paid for according to the title of any print or label, not a trade-mark, six dollars, which shall cover the expense of furnishing a copy of the record, under the seal of the Commissioner of Patents, to the party entering the same."

It will be apparent that the duties of the Commissioner of Patents as to the registry of prints and labels are not changed by the act of June 18, 1874, from the duties exercised by the Librarian of Congress under the then existing

laws; the duties still remain the same, the only change being in the official by whom they are to be performed.

The same laws govern the registration of prints and labels in the Patent Office as prevail in the recording of copyrights in the office of the Librarian of Congress.

In the case of Marsh vs. Warren, reported in 14th Blatchf., p. 264, his honor, Judge Blatchford, said: "The statutory provisions which confer the rights and regulate the remedies of persons who register in the Patent Office, under the act of June 18, 1874 (18 U. S. Stats. at Large, 78), prints or labels designed to be used for any other articles of manufacture than pictorial illustrations and works connected with the fine arts, are those which are contained in sections 4948 to 4971 of the Revised Statutes, in regard to copyrights."

The acts of Congress relating to patents, also those relating to the registration of trade-marks, give the Commissioner the right to regulate the modus of applications, and the right to decide on the propriety of issuing patents or certificates of registration of trade-marks; but the act relating to labels and prints, bearing close analogy to the acts relating to copyrights generally, and being in truth but a branch of the latter, carefully abstains from granting, but a receiving and receipting, power to each of the recording tribunals. The evident intention of Congress was, in view of the multiplicity of business connected with the matter of securing copyrights, to place the burden of showing the legality of all the proceedings upon those who claim to have acted in obedience to the law. If one deposits with the Librarian of Congress the title of a book, claiming that he owns it, and that he is a citizen of the United States, or that the thing which he calls a book is in reality a book, it is not for the Librarian to inquire into the truthfulness of these assertions, but he issues his receipt, receives the papers and fees submitted, and leaves the party to such relief as owing to the proceedings had before him, and his other statutory rights the law entitles him to enjoy. Hence, it has frequently happened that persons, litigants in court, seeking relief for violation of their copyrights, were told by the court that their copy-

rights were not lawfully recorded; that the steps essential for the purposes of protection under the law, had not been correctly taken. Clayton vs. Stone, 2 Paine, 383.

Strictly analogous to this should be the proceedings relating to prints and labels. The act (June, 1874) does not say that the Commissioner shall exercise any discretion in this matter, does not say that he should make an examination into the matter, does not say that he should issue a certificate to the party recording a label, but simply provides that labels may be registered in the Patent Office, that the Commissioner is charged with the supervision and control of the entry of the registry of such prints or labels, and that when the fee of $6 is paid this shall also cover the expense of furnishing " a copy of the record under the seal of the Commissioner of Patents," to the party entering the same.

The questions in the present case are not new, but have already been determined by this court in the case of The United States, ex rel. The Willcox & Gibbs Sewing Machine Co., vs. E. M. Marble, 1 Mackey, 284. The case now before the court is one of many of the same character.

Heretofore it has always been a rule of the Patent Office that the decisions of one Commissioner were binding upon his successors in office in cases where the same questions arose again, and were to be followed by them. But the defendant seems to diregard this rule, and either ignores decisions of his predecessors or else fails to avail himself of that ready means of acquainting himself with them which the Government places at his disposal. In the case of Schumacher & Ettlinger, reported in the printed volume of " Decisions of the Commissioner of Patents and U. S. Court " for the year 1876, page 75, Mr. Spear, acting Commissioner, held as follows:

" It appears from the record that these applicants applied for the registration of a certain print, the proper number of copies of which were attached to the application."

" The print is made up of a combination of colors, figures and words.   *   *   *

"A certificate of registration was refused by the examiner, first, because the print amounted to a trade-mark, being purely an arbitrary symbol, and not in any one of its features descriptive ; second, because it may become a trademark by adoption and use ; and as applicants desire to multiply and sell copies of it, it would seem that protection should be sought under the law as a new and original design ; and that to entitle the label to registration under the act of June 18, 1874, it must be 'intended to be used for some article of manufacture.'"

"The position taken by the examiner that the print is not intended for use for any article of merchandise, and therefore not capable of registration as a print or label, does not appear to me tenable.

"It appears from an inspection of the print, as well as from the statements of counsel for the petitioners, that this print is not 'connected with the fine arts,' but that it is designed for articles of manufacture.

"Now, if it is not connected with the fine arts as an engraving, cut, print or photograph, or painting, or any such thing recognizable at once as belonging to the fine arts, then these petitioners could have no protection by registration with the librarian of Congress. If they have none here, then none is provided for in law. But the registration of trade-marks in the Patent Office is an offshoot of the copyright law, and I understand that these prints or labels, whenever they are intended for use with articles of manufacture, may be registered in the Patent Office on exactly the same terms and conditions, except that a larger fee is paid, as works of art may be registered with the librarian of Congress.

"The fact that these parties make and sell these prints, and do not themselves apply them to articles of manufacture, should not, in my judgment, deprive them of protection in the right of exclusive manufacture of the thing which they have produced. There is no such requirement in the law, all that is there prescribed is that the prints or labels must be such as are 'designed for use' for articles of

manufacture. Nor in this case could the print be considered a trade-mark, inasmuch as it is not appropriated to any particular class of goods. The protection which they seek, and which a certificate of registration will give them, is no more than protection in the exclusive right to make and sell this particular print. The decision of the examiner is reversed." See also Com. Dec., vol. 8, Off. Gaz. Pat. Off., 277 ; *In re* Orcutt & Sons.

The Commissioner of Patents, when he undertook to exercise his discretion in registering this label, must also have been aware of Judge Blatchford's opinion in Marsh *vs.* Warren. Indeed, this opinion was considered of so great importance that it has been reported twice in the same volume. It will be found at page 161 of the Decisions of the Commissioner of Patents for the year 1878, and again at page 394 of the same volume.

The relators have not changed their business since the decision of Commissioner Spear, above quoted, and the label which they now seek to have registered is of exactly the character as that which he then held to be a label and not a trade-mark, and their exclusive right to make and sell which he said could only be secured by such registration.

But the present Commissioner says that what the relators have produced is a trade-mark, and that if they desire to protect their rights under the same, they must register it as a trade-mark; they can't pay six dollars to the government for a label when a trade-mark costs twenty-five dollars, and thus secure to themselves the same rights, as the Commissioner seems to imagine, that they would have under a trade-mark.

Another way of putting the present Commissioner's decision, is this: these relators make and sell certain labels (pictures); this is their business, and these labels are their goods; now, the Commissioner would compel these parties to register these goods as a trade-mark—that is, the goods themselves would be trade-marks of themselves. Such a position of affairs was never contemplated by any act of Congress, and never could arise but in the fertile brain of the defendant.

Aside from this, however, the picture sought to be registered is purely a label, and has not that essential characteristic of a trade-mark, *i. e.*, that which distinguishes the goods of one manufacturer from those of another; there is no arbitrary name applied to this picture that would indicate origin or ownership of the goods to which it might be applied. Indeed, the relators can with perfect propriety sell this label to various merchants, its use being merely an ornament or finish to the boxes or packages containing goods, and in no way indicating that such goods are of a particular make.

We think that we have shown clearly that it is not the intention of the statute to invest the Commissioner of Patents with discretion in the registry of labels; that such has been the views of former Commissioners and that such has been the decision of this court; and further, that if he were clothed with judicial powers he could not refuse to register the label here so ught to be recorded, as the same is, without a doubt, a label or print and not a trade-mark.

Mr. Chief Justice CARTTER, after stating the case, delivered the opinion of the Court.

It is objected in behalf of the Commissioner of Patents that the act of Congress of June 18, 1874, providing for the registration of labels is unconstitutional and therefore void. A very elaborate, ingenuous, and perhaps, under appropriate circumstances, successful argument, has been made to sustain this position. But we think the point raised has no application to this case. We do not think it lies in the mouth of a government official to call in question the constitutionality of a law directing him to perform a purely ministerial duty. If the question was raised between other parties, as for instance, in a suit for infringement in the use of a label, and the constitutional rights of the parties were involved in it, that is to say whether one man was prohibited from using it because another man had regis-

tered it as a label, the argument might be pertinent, but we do not think it is a question which can be raised here.

The next reason assigned by the Commissioner for his refusal to comply with the petitioner's demand is that the design offered for registration is a mere fanciful sketch which, while it may be used as a trade-mark, has none of those descriptive features about it characteristic of a label. A label, it is contended, consists of a pictorial representation or a written description of the article to which it is affixed; and that a fancy picture, such as this, having no connection with its proposed use or application, cannot be registered as a label. This question has been settled by this court in the case of the Sewing Machine Co. *vs.* Marble.\* We decided in that case that the duty of the Commissioner of Patents, on the application to him to register a label, is a purely ministerial one, as much so as the act of a recorder of deeds in placing upon public record a muniment of title. The statute has not defined what shall be considered a label, whether it shall be a picture or a writing; whether it shall be descriptive of the article to which it is affixed, or whether it may be a mere arbitrary design. If the applicant presents it as a label, and appeals to the Commissioner to give it the protection which the law provides for it as a label, the duty of the Commissioner is to register it, and in doing so he gives it only the protection which the statute provides. It is not protected as a trade-mark nor as a copyright. The public at large may use and enjoy it, but *qua* label it is restricted to the use of the party who has registered it for that purpose and no other. With the character of the device the Commissioner is not at all concerned. His function is as purely ministerial as it is capable of being. The writ will issue.

---

\*1 Mackey, 284.